WILSON (BENNETT v.). See Case No. 1,-326.

----

## Case No. 17,791.

### WILSON v. BERRY.

[2 Cranch, C. C. 707.] [1]

Circuit Court, District of Columbia. May Term, 1826.

ARREST OF JUDGMENT—VARIANCE.

A variance between the capias ad respondendum and the declaration is not a ground for arresting the judgment.

The capias ad respondendum was issued in trespass on the case. The declaration was in covenant upon a sealed instrument covenanting to pay certain debts amounting to $846.-47, with interest. The defendant [B. M. Berry] appeared and pleaded "covenants performed," &c., upon which there was an issue, and a verdict for the plaintiff.

----

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Frost, for defendant, on the 20th of June, 1826, moved in arrest of judgment, on account of the variance between the writ and the declaration, and cited 3 Bl. Comm. 393; 1 Chit. 438, 443.

Mr. Swann, for plaintiff, contended that judgment cannot be arrested for error in process.

CRANCH, Chief Judge. This is a motion in arrest of judgment for variance between the writ of capias ad respondendum and the declaration; the writ being in trespass on the case, and the declaration being in covenant. "Arrests of judgment arise from intrinsic causes appearing on the face of the record; of this kind are (1) Where the declaration varies totally from the original writ; as where the writ is in debt, and the plaintiff declares in an action upon the case for an assumpsit; for the original writ out of chancery being the foundation and warrant of the whole proceedings in the common pleas, if the declaration does not pursue the nature of the writ, the court's authority totally fails." 3 Bl. Comm. 393. In England, pleas in abatement to the count could only be pleaded in actions by original writ. After declaration, formerly, the defendant might demand oyer of the writ, and then, the same being set forth on the roll, if there were any variance between the count and the writ, and a record or specialty, &c., mentioned in the count, the defendant might plead such variance in abatement, or demur; move in arrest of judgment, or sustain error. 1 Chit. Pl. 438; Hole v. Finch, 2 Wils. 394; Com. Dig. "Abatement," G, 8; 3 Instr. Cler. 62; Reg. Pl. 277, 278. But, as the variance between the writ and count could in no case be pleaded without craving oyer of the writ (Hole v. Finch, 2 Wils. 394, 395), and the defendant cannot now have such oyer, such variance or defect is no longer pleadable in abatement, and if it be pleaded in abatement, the plaintiff may sign judgment, or move the court to set the plea aside. 1 Chit. 438; Murray v. Hubbart, 1 Bos. & P. 646, 647; Gray v. Sidneff, 3 Bos. & P. 395; Deshons v. Head, 7 East, 383; Boats v. Edwards, 1 Doug. 227; Spalding v. Mure, 6 Term R. 364. Nor will the court set aside the proceeding, in respect of the variance, as oyer of the writ cannot now be craved. Hole v. Finch, 2 Wils. 393; Oakley v. Giles, 3 East, 167; 1 Chit. 247, 249; Boats v. Edwards, 1 Doug. 227. It is one of the general requisites of a declaration, that it corresponds with the process (Com. Dig. "Pleader," C, 13), and, in bailable actions, with the ac etiam and affidavit to hold the bail (1 Chit. 248).

Regularly the declaration should correspond with the process; but as, according to the present practice of the courts, oyer of the writ cannot be craved, and a variance between the writ and declaration cannot, in any case, be pleaded in abatement (1 Saund. 318, note 3; Gray v. Sidneff, 3 Bos. & P. 395; Spalding v. Mure, 6 Term R. 364), and as

there are several instances in which the court will not set aside the proceedings on account of a variance between the writ and declaration, many of the older decisions are no longer applicable in practice. In the king's bench, when the proceedings are by special original, the venue must be laid in the county, into which the original was issued, or, in bailable cases, the bail will be discharged; but in the common pleas the bail would not be discharged by such variance. Smithson v. Smith, Willes, 461; Id., Barnes, 94; Stroud v. Lady Gerrard, 1 Salk. 8; Doo v. Butcher, 3 Term R. 611; Hole v. Finch, 2 Wils. 393; Bac. Abr. tit. "Pleas," I, 11; Tidd, Prac. 582, note 1.; Benson v. Derby, 1 Ld. Raym. 249, cont. Chitty (volume 1, p. 254) says: "Upon common process by bill in the king's bench, or upon a capias, or original quare clausum fregit in the common pleas, the plaintiff may declare in any cause of action whatever, although the writ in each case is in trespass. Foster v. Bonner, Cowp. 455. But in bailable actions, the declaration must correspond with the cause and the form of action in the affidavit, and the ac etiam part of the latitat or other process, for otherwise the defendant will be discharged out of custody upon filing common bail; but this will be the only consequence, for the court will not, in such a case, set aside the proceedings for irregularity." And, even "when the proceeding has been by special original, if there be a variance between it and the declaration, the defendant will be discharged on entering a common appearance; but the proceedings will not be set aside merely on account of a variance in the cause of action; and therefore the only consequence of the mistake is, that the plaintiff loses the security of the bail." In Hole v. Finch and Jackson v. Doleman, cited in 2 Wils. 393, the court said: "One reason why the court should not interpose is, that after the defendant hath appeared, and is in court, there is an end of the mesne process; and if the defendant craves oyer, it must be of the original writ; he cannot have it of the mesne process; and if application was to be made to the master of the rolls, he certainly would not refuse to order right originals to be made out in both these cases." In the case of Murray v. Hubbart, 1 Bos. & P. 647, Eyre, C. J., said: "The arrest, however, is not the operation of the writ, but of the mesne process, which is out of the question, after appearance." "The objection to the mesne process being cured by appearance in the true name, the writ, whenever it is properly called for, will be found to be a writ against the party by his true name." "The case, therefore, comes to this, that so long as it is the practice of the court to issue the mesne process first, and to allow an original to be sued out afterwards, if necessary to substantiate the proceedings, no advantage can be taken, after appearance, of a misnomer in mesne process." In Gray v. Sidneff, 3 Bos. & P. 348, Lord Alvanley, C. J., in

delivering the opinion of the court, said: "It has been long the practice not to grant oyer of original writs; and though, perhaps, such refusal may be considered in the first instance to have been a strong measure; yet it was the necessary consequence of assuming jurisdiction without original." "When courts adopt a fiction, they must necessarily support it. The court of king's bench would not allow a party to say that he was not in the custody of the marshal; nor the court of exchequer, that he was not the king's debtor. By this doctrine, no right is taken away from the subject, nor is he proceeded against in any way injurious to himself. If such a plea were to be allowed, the master of the rolls would issue a new writ agreeable to the declaration. If the court thinks itself at liberty to proceed without an original, it will never permit a mode of proceeding to be adopted which will have the effect of compelling the plaintiff to sue out that original which the court feels itself justified in acting without." See, also, Deshons v. Head, 7 East, 383; 1 Saund. 318, note 3. In England, neither the original writ, nor the mesne process is entered on the roll, so as to form any part of the record either in the king's bench or common pleas. A record in the king's bench commences in this form: "London, ss. Memorandum that on Monday next, after three weeks of St. Michael, in that term, before our lord the king at Westminster, came R. B. by D. S. his attorney, and brought here into the court of our said lord the king, then and there, his certain bill against C. D. in the custody of the marshal, &c. of a plea of trespass on the case; and there are pledges of prosecution, to wit, John Doe and Richard Roe; which said bill follows in these words, to wit: London, ss. R. B. complains of C. D. in the custody of the marshal of the marshalsea of our lord the king, before the king himself being, for this, to wit," &c. See 1 Modus Intrandi, 1; Barker v. Thorold, 1 Saund. 40. A record in the court of common pleas commences in this form: "Essex, ss. Elizabeth Savil, late of, &c. in the county aforesaid, administratrix, &c. was summoned to answer to Thomas Wallford of a plea that she render to him £300, which she detains from him; whereupon the said Thomas, by John Reynolds, his attorney, says," &c. A record in the king's bench, when sent up by writ of error, is headed thus: "Pleas before our lord the king at Westminster, of the term of the Holy Trinity, in the second year of the reign of our lord James the Second, now king of England," &c. Rot. Cur. Reg. 139; Grey v. Briggs' Adm'r, 1 Lutw. 889. A record from the common pleas is headed thus: "Pleas at Westminster, before George Treby, knight, and his associate justices of our lord the king of the bench, ss. In the term of St. Hilary in the tenth and eleventh years of the reign of our lord William the Third," &c. Rot. Cur. Reg. 1337.

It appears by the case of Longvill v. Hun-

dred of Thistleworth, 6 Mod. 27, that judgment cannot be arrested for variance between the original writ and declaration, unless the writ be made part of the record by oyer. There is no case in the books where judgment has been arrested for variance between the declaration and the process. In the case of Bragg v. Digby, 2 Salk. 658, "the defendant without praying oyer of the original writ, pleaded variance between the writ and count, showing particularly wherein; and the plaintiff demurred; and it was adjudged that the defendant should answer over; for he ought to have demanded oyer of the writ before he could take advantage of the variance; because, although the writ is in court, yet not being upon the same roll with the count, the defendant cannot plead to it without demanding oyer." And in Ellery v. Hicks, 4 Mod. 246, upon a motion in arrest of judgment on the ground of a variance between the original writ and declaration, "the exception was disallowed, because the defendant cannot take advantage of an ill original, without demanding oyer of it; which had not been done." See, also, Stephens v. White, 2 Wash. (Va.) 212; Mr. Justice Lyon's opinion. In Lindo v. Gardner, 1 Cranch [5 U. S.] 344, there is a note of the reporter, intimating that in Maryland the capias ad respondendum is considered as part of the record; but this is the mere dictum of the reporter, unsupported by any authority. In the case of Lowry v. Lawrence, 1 N. Y. Term R. [1 Caines] 71, the court said "that the declaration must be captioned (entitled) of the term when the writ is returned served;" and the court must (from the recital at the head of the declaration, that "heretofore, to wit, on the third Tuesday of July, in July term, 1801, came William Lowry and brought into the said court then and there his certain bill," &c.) "necessarily intend the fact that the writ was returned in July term, 1801, and of course the action, both in fact and technically speaking, commenced previously to that time."

This reasoning shows that the writ itself was not considered as part of the record; because, if the writ itself had been officially before the court, the judges would not have resorted to inference for proof of the time of its issuing or of its return, but would have looked at the writ itself.

Finch, in his "Common Law" (folio 54b, French Ed., p. 172, English Ed. 1759, lib. 3, c. 1), says "such is the commencement of the suit" (that is, the original writ). "The proceeding until judgment consists of two parts, the parol and the process, and this is proved by the form of the writ of error; because in the record and process, and the giving judgment of the plaint, &c. Reg. Brev. 116; 8 Coke, 157b. The parol which is called the 'plaint,' is that which depends in plea, namely, all the time until judgment; for after judgment the suit is not said depending. And all this is entered of record in a roll, which is called the 'plea-roll'; but the entry of the original writ in the roll is but superfluous, forasmuch as the writ always remains of record, and is sufficient by itself; but it shall not have any roll, although the contrary is used. Variance in any part of the original writ shall be amended at any time." "Stat. 14, Edw. III. c. 6; 9 Hen. V. c. 4; 4 Hen. VI. c. 3; 8 Hen. VI. cc. 12, 15; 5 Geo. I. c. 13;" 8 Coke, 156b. And again, in page 177 (folio 56a), he says: "After the count, the defendant, for his aid to plead better, shall have oyer, if he demand it, of every thing which is not parcel of the record, as of the writ and return thereof; of an obligation and the condition, and the like." In Arthur Blackamore's Case, 8 Coke, 156b, 157a, Lord Coke says: "So at the common law the judges might amend as well their judgment as any other part of the record, &c., in the same term (Co. Litt. 260a; 5 Coke, 74b), for during the same term, the record is in the breast of the judges, and not in the roll. But at the common law the misprision of clerks, in another term, in the process, was not amendable by the court; for in another term the roll is the record; and therefore by 14 Edw. III. c. 6, it is enacted, &c., that no process shall be annulled," &c. "But this statute doth not extend to an original writ, nor to a writ which is in the nature of an original, for that is not included in this word 'process.'" "Recordum" (in the writ of error), contains "the plea-roll;" "Processus, all the proceedings out of it till judgment." 8 Coke, 157b. "And the first part of the record is the count." 8 Coke, 161a. Blackstone (3 Bl. Comm. 272, 273) says, the original writ, issued out of chancery, "is the foundation of the jurisdiction of the court; being the king's warrant to proceed to the determination of the cause. For it was a maxim, introduced by the Normans, that there should be no proceedings in the common pleas before the king's justices without his original writ; because they held it unfit that those justices, being only substitutes for the crown, should take cognizance of any thing but what was thus expressly referred to their judgment." Fletch. Trustees, bk. 2, c. 34; Gilb. Com. Pl. Introduction, x; Gilb. Com. Pl. 2; Fletch. Trustees, 58. See, also, Finch, 198, as to the definition of process, mesne process, and judicial process. Finch, 168, says: "Until the original writ be returned the suit is not said depending." "nor can the courts hold plea but upon an original returned before them." Gilbert, in his History of the Practice of the Common Pleas (page 26), says: "The appearance of the plaintiff and defendant in propriâ personâ, at the return of the writ, is recorded by the philazer" (the officer who issues process), "because he was to continue the process of the court, till the prothonotary took it upon the declaration, this prothonotary sets forth the authority by which the court proceeded, that the court might appear to have cognizance of the cause, and that they pur-

sued their warrant; and therefore in all actions where the first process is by summons, though he did not appear at the return of the summons, and they had issued several mesne writs, yet they only took notice of the summons, and said summonitus fuit ad respondendum, and so in trespass, attachiatus fuit ad respondendum." See, also pages 96, 97. And in page 42 Gilbert says further: "But where there is a variance between the original and the count, or the bond, and oyer prayed, there the variance may be pleaded, because it was usual for the pleaders to show it to the court and have the writ abated; these, taken down by the prothonotary, were the original of those pleas in abatement; but when the recital of the writ and the count itself were entered on record, if there were any material variance, the defendant might take advantage of it, not only by way of plea, but by motion in arrest of judgment after the verdict, or by a writ of error; because the writ being the foundation and warrant of the whole proceedings, if the plaintiff did not pursue it by his count there was no authority to the court to proceed in such cases."

A mistake in the recital of the writ is immaterial after verdict; and if there be a variance between the recital of the writ, and the count, the court, unless the contrary appears, will, after verdict, intend that there was a good original; and that the plaintiff's clerk had made a mistake in the recital of it. Redman v. Edolph, 1 Saund. 317, 318. Again, in chapter 10, p. 86, Gilbert says "that matter amendable, and matter of form, as the law now stands, will not arrest judgment." And in page 87 he says: "That part of the count which recites the writ, was amendable at common law;" and in page 95: "The writ" (meaning the original writ) "is amendable if there be false Latin, if it be only in the form of the writ; but if it be in the substance it shall not be amendable; for the statute gives the court leave, where they have sufficient authority to proceed, to amend the form, but not to make an authority for themselves by altering the substance of the writ." See, also, Tidd, Prac. 124, and Davis v. Owen, 1 Bos. & P. 343, that the capias is no part of the record, and may be amended.

The result of my reflections is this: In England, the reason why a variance, between the original writ and count, was fatal, was because the original writ was the foundation of the authority of the court to take cognizance of the cause, and the warrant to the judges to proceed to judgment. It was necessary that they should pursue their authority strictly. Their acts, if not warranted by the writ, were void. But as these writs have, for a long time, been grantable of common right, (ex debito justitiæ,) and as the jurisdiction of the courts has been so long established, and precisely ascertained, it became apparent to the whole nation, that a particular warrant to the judges, in every case, was wholly unnecessary, and had become a mere matter of form. The judges themselves, finding that justice was often defeated or delayed by exceptions taken to the accidental variance between the count and the writ, even after the parties had pleaded and gone to trial upon the merits, decided that the defendant should not take advantage of such variance without oyer of the writ; and finally that oyer should not be granted when that was the object; and that if a variance appeared between the recital of the writ and the count, they would, after verdict, intend that there was a good original, which had been misrecited by the misprision of the clerk, so that, at this time, no advantage can, in England, be taken of any such variance. In that country the judicial power is not separated from the executive. The king is the source of all judicial authority. In theory, he himself is supposed to exercise judicial power. The judges are his delegates or substitutes, and can hear no cause unless it be referred to them by the king, or be brought before them by his order. Hence the necessity, at first, of original writs. But in this country the judicial power is a separate branch of the national sovereignty. It does not emanate from the executive; and after being organized by the legislature it is independent of both. It exercises its functions suo jure, although the jurisdiction of each particular tribunal is described and defined by the legislature at the time of its erection. It is not necessary that each particular case should be referred to the court by a higher authority. It requires no original writ to warrant its proceedings. Every person has access to it, as of common right. It is bound to hear and determine every case, brought judicially before it, of which it has jurisdiction. The writ which is issued to compel the appearance of the defendant, is what, in England, is called "process," issued from the court itself, and not an original writ issuing from another tribunal. Although it may be called the "original writ" because it is the first writ which issues in the cause, yet it has not the qualities of the English original writ; and no variance between it and the count can abate it, because it is not the foundation of the authority of the court; and if it could be thus abated, the abatement of the process, issuing from the court itself, could not deprive the court of that cognizance of the cause which it must have had before it issued the process.

There is no instance, in the English books, of a plea in abatement, or of an arrest of judgment for variance between the count and the process. Such variance is seldom noticed, unless it affect the interest of third parties, as in bailable cases, or unless it be very material. The mode of taking advantage of such variance, is not by plea, but by motion, either to discharge the bail, or to set aside the proceedings for irregularity. It is a motion to the discretion of the court; not

as a matter of strict right; and the court varies the remedy according to the justice of the case. 1 Chit. Pl. 248, 254. When we find that the English courts have deemed it necessary for the purposes of justice to throw obstacles in the way of taking advantage of a variance between the original writ and the count, and that no advantage, by way of plea, or motion in arrest of judgment can there be taken of a variance between the process and the count, it would seem strange that we, who have no original writ sent to us as the foundation of our jurisdiction, should decide that the process is abated by its variance from the declaration; or that judgment should be arrested for that cause. The English doctrine, respecting the original writ, is wholly inapplicable to our courts; and a doctrine which for its injustice and inconvenience, has been reprobated there, ought not to be gratuitously assumed here. The reason why, in England, judgment was arrested for variance between the original writ and count, was, that the court had no jurisdiction of the cause actually prosecuted; and it is never too late, before judgment, to show that the court has no authority to give the judgment which is asked. But in this country an error in the process does not affect the jurisdiction or authority of the court, especially when the defendant has appeared upon that process and pleaded to the action. The process is only the means of bringing the defendant into court. If he appear and do not object to the process, nor move to be discharged on account of its irregularity, but submit himself to the jurisdiction of the court, it is immaterial by what sort of process he is brought in.

But it may be asked, shall a man arrested for trespass, be obliged to answer to the plaintiff in an action of debt? In answer, it may be asked, why not here as well as in England? No inconvenience is felt there in this course of proceeding. The only objection would be on behalf of the bail, and he might be relieved on motion.

I think it quite immaterial whether the capias ad respondendum, be, or be not, part of the record; for if it be, a variance between it and the count is not fatal, for the reasons before stated; and if it be not a part of the record, the variance does not judicially appear, and cannot be noticed by the court.

The motion in arrest of judgment is overruled.